OPINION
{¶ 1} Decedent, Sharon Esken, died on February 16, 2002, survived by her spouse, plaintiff-appellant, Leonard Esken. According to the coroner's report, the immediate cause of death was "multiple drug intoxication" and the report indicated the injury occurred by "drug overdose." The coroner identified the manner of death as an "accident."
 {¶ 2} At the time of her death, Esken was employed by MedAmerica Health Systems, Inc. Appellee, Zurich America Insurance Company, issued two policies of accident insurance designated, GTU 29-07-553 and GTU 29-07-554, to Esken's employer. Appellant made claims under both policies and Zurich denied the claims, citing to policy language that "a loss shall not be a covered loss if it is caused by, contributed to, or resulted from a purposeful self-inflicted wound."[1]
 {¶ 3} Appellant filed suit[2] on the claims to obtain benefits under the two policies. Appellant and Zurich filed cross-motions for summary judgment. The trial court granted summary judgment to Zurich and denied summary judgment to appellant. An appeal to this court followed. We reversed and remanded the matter to the trial court with instruction to identify the policy language it used to determine Zurich had the discretionary authority to interpret the plan.
 {¶ 4} The trial court did so, and again granted summary judgment against appellant and in favor of Zurich on the claims. The renewed summary judgments are now before us on appeal.
 {¶ 5} Appellant assigns one error as follows:
 {¶ 6} "THE TRIAL COURT ERRED IN GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND CONTEMPORANEOUSLY DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT."
 {¶ 7} The parties do not dispute appellant's claims fall under the Employee Retirement Income Security Act ("ERISA"). Section 502(a)(1)(B) of ERISA, Section 1132(a)(1)(B), Title 29, U.S. Code, states that a civil action may be brought by a participant or beneficiary to recover benefits due him under the terms of his ERISA regulated plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan. The denial of benefits challenged under ERISA is to be reviewed under a de novo standard unless the benefit plan gives the plan administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan. Firestone Tire Rubber Co.v. Bruch (1989), 489 U.S. 101, 115, 109 S.Ct. 948, 957.
 {¶ 8} On remand, the trial court found the language of both policies did allow Zurich's plan administrator discretion to determine eligibility, and reviewed the plan administrator's decision to deny benefits under the "highly deferential arbitrary and capricious" standard. See Sanford v. Howard Indus., Inc.
(C.A.6, 2001), 262 F.3d 590, 595; Shelby County Health CareCorp. v. Southern Council of Ind. Workers Health Welfare TrustFund (C.A.6, 2000), 203 F.3d 926, 933 (holding a decision is not arbitrary and capricious if it is based upon a reasonable interpretation of the plan).
 {¶ 9} In reviewing the trial court's action in the instant appeal, we will look at each policy and its language separately.
 Policy GTU29-07-553 {¶ 10} Appellant concedes that this policy gives the plan administrator the discretionary authority to determine eligibility for benefits and to construe the plan.[3] This creates a highly-deferential standard of review as to the administrator's findings, and they can only be reversed if they are determined to be arbitrary and capricious. Under the standard, we determine whether Zurich's denial of benefits is based upon a reasonable interpretation of the facts and the plan. See Shelby County.
 {¶ 11} The plan administrator examined the proof of death claim form, a certified copy of the death certificate, a copy of the coroner's report with toxicological analysis, a copy of a police report and medical records. The plan administrator then interpreted the policy exclusion language to mean that an intentional act that results in a loss will not be covered if there is a reasonable likelihood that the act will result in injury.
 {¶ 12} Applying the highly-deferential standard of review to the plan administrator's findings that Esken died of a multiple drug overdose; the act of taking the overdose was intentional; and that Esken had a history of abusing prescription drugs, we cannot say the plan administrator's findings are unreasonable.
 {¶ 13} The plan administrator construed the following exclusion language: "A loss shall not be a covered loss if it is caused by, contributed to, or resulted from suicide, attempted suicide, or a purposeful self-inflicted wound." As is evident, the exclusion language distinguishes between "suicide" and "purposeful self-inflicted wounds." Therefore, a "purposeful self-inflicted wound" does not require an intention to cause one's own death. To conclude otherwise would require us to render either the term "suicide" or the phrase "purposeful self-inflicted wound" superfluous and meaningless.
 {¶ 14} The term "wound" is not defined in either of the policies. The word must therefore be interpreted as would the average person, giving the word its plain, natural, and ordinary meaning. See Gomolka v. State Auto. Mut. Ins. Co. (1982),70 Ohio St.2d 166, 1721-73. Webster's defines wound as "[a] ninjury to the body consisting of a laceration or breaking of the skin or mucous membrane usually by a hard or sharp instrument forcefully driven or applied." Webster's Third New InternationalDictionary (1993) 2638 (emphasis added). The American Heritage Dictionary defines wound as "[a] n injury, especially one in which the skin or other external surface is torn, pierced, cut, or otherwise broken." The American Heritage Dictionary of theEnglish Language (1992) 2059 (emphasis added). Black's defines wound as "[a] n injury to the body of a person or animal, especially one caused by violence, by which the continuity of the covering, as skin, mucous membrane, or conjunctiva, is broken."Blacks Law Dictionary (1990) 1607 (emphasis added).
 {¶ 15} The foregoing dictionary definitions indicate that while a wound often involves external trauma, in its plain, ordinary sense, a wound is always an injury. Accordingly, it is reasonable to conclude that the policy excludes coverage for purposeful self-inflicted injuries.
 {¶ 16} To find an insured died of a purposeful self-inflicted wound, there must be evidence that the insured committed an act from which there is a reasonable likelihood that injury will result. Shepherd v. Metropolitan Life Ins. Co. (Mar. 10, 1995), S.D. Ohio No. C-39-3-329. The record includes evidence indicating that Esken's conduct, overdosing multiple drugs, was reasonably likely to result in injury.
 {¶ 17} Giving the required deference to the plan administrator's findings and construction, we cannot say she was arbitrary or capricious in denying coverage under policy GTU29-07-553. Accordingly, we uphold the trial court's decision granting summary judgment to Zurich and against appellant under policy GTU 297-07-553.
 Policy GTU29-07-554 {¶ 18} The trial court, in reviewing the plan administrator's denial of coverage under GTU 29-07-554, agreed with the plan administrator that this policy also reserved discretion to interpret the facts and the plan. The plan administrator and the trial court both relied upon the following language, which appears in both insurance policies: "Written proof of loss, acceptable to Us, must be sent within 90 days of the loss. Failure to furnish Proof of Loss acceptable to Us within such time shall neither invalidate nor reduce any claim if it was not reasonably possible to furnish Proof of Loss and the proof was provided as soon as reasonably possible."
 {¶ 19} Appellee asserts that the phrase "acceptable to us" in the provision quoted above grants discretion to the plan administrator when determining whether a loss is a covered loss or excluded. We disagree.
 {¶ 20} This provision falls under the section heading: "How to file a Claim." The section begins: "The Insured or the beneficiary, or someone on their behalf, must give Us written notice of the Covered Loss within 90 days of such loss. The notice must name the Insured and the Policy Number. To request a claim form, the Insured or the beneficiary, or someone on their behalf may contact us * * *. "We will send the claimant Proof of Loss forms within 15 days after We receive notice. If the claimant does not receive the Proof of Loss form in 15 days after submitting notice, he or she can send Us a detailed written report of the claim and extent of loss. We will accept this report as a Proof of Loss if sent within the time fixed below for filing Proofs of Loss." The section then states that "Written Proof of Loss, acceptable to Us, must be sent within 90 days of the loss."
 {¶ 21} The foregoing provisions, read in context, clearly indicate that the "acceptable to us" language refers only to whether the claim forms used by an insured constitute proper notice to Zurich. These provisions do not bear upon a determination of whether a loss is a covered loss.
 {¶ 22} Policy GTU 29-07-554 does not otherwise contain a provision granting discretion to Zurich as is contained in policy GTU 29-07-553. Accordingly, we find the drafter only intended to grant discretion to the plan administrator in policy GTU 29-07-553, and not in policy GTU 29-07-554.
 {¶ 23} We hold therefore that the trial court applied the wrong standard in reviewing the plan administrator's denial of coverage under policy GTU 29-07-554. Accordingly, the order granting summary judgment to Zurich and against appellant as to policy GTU 29-07-554 must be reversed and remanded to the trial court to reconsider the cross-motions for summary judgment applying a de novo standard of review to Zurich's denial of coverage.
 {¶ 24} In sum, we affirm the trial court's decision granting summary judgment to Zurich and denying summary judgment to appellant on the denial of coverage under policy GTU 290-7-553. We reverse the trial court's decision granting summary judgment to Zurich and denying summary judgment to appellant on the denial of coverage under policy GTU 29-075-54. This matter is remanded to the trial court with instructions to apply the de novo standard of review as to policy GTU 29-07-554, and for further proceedings consistent herewith.
Powell, P.J., and Bressler, J., concur.
[1] In policy GTU 29-07-553, the word "wound" was not included after "self-inflicted." The trial court ruled that such omission was inadvertent and a typographical error, and interpreted the policy as if it were there.
[2] See Esken v. Zurich American Insurance Company, Preble App. No. CA2003-11-022, 2004-Ohio-3668.
[3] Policy GTU 29-07-553 states: "The Policyholder agrees that the Policy to which this endorsement is attached constitutes the plan and plan document under the Employee Retirement Income Security Act of 1974 as amended (ERISA). The Policyholder designates Us as the claims fiduciary of this plan and gives Us the discretionary authority to determine eligibility for benefits and to construe the terms of the plan. The Policyholder agrees to comply with the disclosure and reporting requirements of ERISA regarding the plan and Our designation and authority as the claims fiduciary."